**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MARCUS PEAIRS** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **Civil Action No. 1:13cv402-HSO-RHW** |
| | § | |
| **JACKSON COUNTY,** | § | |
| **MISSISSIPPI, *et al.*** | § | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S
[60] MOTION TO STRIKE, AND GRANTING IN PART AND
DENYING IN PART WITHOUT PREJUDICE DEFENDANTS
MIKE BYRD AND HOPE THORNTON'S [57] MOTION
FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY**

BEFORE THE COURT are the Motion for Summary Judgment Based on Qualified Immunity [57] filed by Defendants Mike Byrd and Hope Thornton, in their individual capacities, and the Motion to Strike [60] filed by Plaintiff Marcus Peairs.  These Motions are fully briefed.  Having considered the Motions, related pleadings, the record, and relevant legal authorities, the Court is of the opinion that the Motion to Strike [60] should be denied, that the Motion for Summary Judgment Based on Qualified Immunity [57] should be granted in part and denied in part without prejudice, and that Plaintiff's individual capacity claims against Defendants Mike Byrd and Hope Thornton under 42 U.S.C. §§ 1983, 1985, and 1986 should be dismissed with prejudice.

# I. BACKGROUND

A.   Factual Background

This case arises out of the June 1, 2011, search of a home and computer, and the subsequent arrest and detention, of Plaintiff Marcus Peairs ("Plaintiff") by the Jackson County, Mississippi, Sheriff's Department.  Defendant Mike Byrd ("Byrd") was the Sheriff of Jackson County, Mississippi, and Defendant Hope Thornton ("Thornton") was a detective with the Jackson County Sheriff's Department.

On March 8, 2011, Thornton obtained information from the Children Protection System advising that a certain Internet Protocol ("IP") address had downloaded what appeared to be child pornography.  Investigator's Report [57-1] at 1; Dep. of Hope Thornton Manning [57-5] at **4**.  "Thornton continued investigation by conducting surveillance on the [IP address]" and obtained information regarding two different files which appeared to contain child pornography.  Investigator's Report [57-1] at 1-2.  On May 31, 2011, Thornton sent a Grand Jury Subpoena Duces Tecum to Cable One to obtain information about the IP address.  Investigator's Report [57-1] at 3; Subpoena [57-3] at 1.  On June 1, 2011, Thornton received information from Cable One that the IP address in question was assigned to Ron Tuskan ("Mr. Tuskan") who resided in Pascagoula, Mississippi, from February 1, 2011, to May 31, 2011.  Investigator's Report [57-1] at 3; Cable One Letter [57-4] at 1; Dep. of Hope Thornton Manning [57-5] at 19-20.

As a result of Cable One's response, Thornton sought and obtained a search warrant from the County Court of Jackson County, Mississippi, for Mr. Tuskan's

address.  Tr. of Revocation Hearing [62-20] at 11; Search Warrant [62-22] at 1-2.

On June 1, 2011, Thornton and other investigators executed the search warrant at

Mr. Tuskan's residence.  Investigator's Report [57-1] at 3. According to Thornton,

Mr. Tuskan had only one desktop computer.  Tr. of Revocation Hearing [62-20] at

12.  The officers conducted a preliminary forensic "fast scan" on Mr. Tuskan's

computer, but did not discover any child pornography.  *Id.*; Investigator's Report

[57-1] at 3; Dep. of Hope Thornton Manning [57-5] at 29.  Thornton determined that

Mr. Tuskan had an open wireless internet connection through his modem, which

would allow someone within a close range of his house to use Mr. Tuskan's internet

service without a password.  Investigator's Report [57-1] at 3; Dep. of Hope

Thornton Manning [57-5] at 30; Tr. of Revocation Hearing [62-20] at 12.

"Thornton proceeded to further the investigation by conducting a knock and

talk[1] with Mr. Tuskan[']s neighbor located [next door]."  Investigator's Report [57-1]

at 3.  Thornton described this neighbor's residence as the "house that was closest to

Mr. Tuskan's modem."  Dep. of Hope Thornton Manning [57-5] at 30.  Thornton

testified that she, Detective Linda Jones ("Jones"), Detective Greg Evans ("Evans"),

and uniformed officer Lonnie Porter ("Porter") were all present.  Dep. of Hope

Thornton Manning [57-5] at 32.

Mr. Tuskan's next door neighbor was Gloria Peairs ("Ms. Peairs"), who is

Plaintiff's mother.  Investigator's Report [57-1] at 3; Dep. of Hope Thornton

---

[1]      The Fifth Circuit has held that a "knock and talk" is "a common and legitimate
police practice."  *United States v. Cooke*, 674 F.3d 491, 496 (5th Cir. 2012).

Manning [57-5] at 30.  Thornton testified that she did not know who lived at the house when she knocked on the door.  Dep. of Hope Thornton Manning [57-5] at 32. Plaintiff resided at Ms. Pears' residence.  Investigator's Report [57-1] at 3. Thornton asked Ms. Pears if she had any computers in the residence, and Ms. Pears responded in the affirmative.  Dep. of Hope Thornton Manning [57-5] at 32. When Thornton inquired about the location of the computer, Ms. Pears "motioned to her left . . . [which] was the room right direct from Mr. Ron Tuskan's."  *Id.*

Thornton asked Ms. Pears for her consent to search for any computers in the residence.  *Id.* at 33.  Ms. Pears purportedly told Thornton that there was only one computer located in one room, which was Plaintiff's bedroom.  *Id.*  Thornton testified that after Jones read Ms. Pears a Jackson County Sheriff's Department consent to search form, Ms. Pears signed it, giving the officers written consent to search the residence, including conducting a search of any computers located in the residence.  *Id.* at 34-35; Investigator's Report [57-1] at 3; Tr. of Revocation Hearing [62-20] at 12; Consent to Search [57-6] at 1.  Upon entering the residence, Ms. Pears informed the investigators that Plaintiff was not at home because he was at work.  Tr. of Revocation Hearing [62-20] at 12.  Ms. Pears then showed the investigators the bedroom Plaintiff used, the door to which was locked.  *Id.* According to Thornton, Ms. Pears retrieved her keys from her bedroom and unlocked Plaintiff's bedroom door for the officers.  *Id.* at 12-13; Dep. of Hope Thornton Manning [57-5] at 33; Investigator's Report [57-1] at 3.  Thornton did not seek Plaintiff's permission to enter the bedroom because, from Ms. Pears' "aspect,

that was her house.  And she had given us consent to that bedroom."  Dep. of Hope Thornton Manning [62-8] at 42.

Once inside the bedroom, investigators observed an unplugged desktop computer and a laptop computer.  Tr. of Revocation Hearing [62-20] at 13; Investigator's Report [57-1] at 3.  Ms. Peairs told Thornton that the laptop belonged to Plaintiff.  Dep. of Hope Thornton Manning [57-5] at 35.  Thornton maintains that she did not scan the laptop at that time.  Dep. of Hope Thornton Manning [57-5] at 35-36.  Thornton testified that when she raised the laptop computer's top, the computer awoke from hibernation mode.  *Id.*  Thornton "could see BearShare was on the front screen downloading into the BearShare library."  *Id.* at 36.  BearShare is a file sharing program.  Investigator's Report [57-1] at 3.  The program had visible a saved library with video contents including a file which appeared to contain child photography.  *Id.*; Dep. of Hope Thornton Manning [57-5] at 39.

Ms. Peairs' version of events varies significantly from that of Thornton. According to Ms. Peairs, an unidentified man and woman knocked on her front door on June 1, 2011, and told Ms. Peairs that because someone in the area was downloading child pornography, they were conducting a door-to-door search.  Aff. of Gloria Peairs [62-4] at 1.  Ms. Peairs claims that when she provided her name to investigators, the woman knew Plaintiff and asked if he was residing at Ms. Peairs' home.  *Id.*  According to Ms. Peairs, the woman told her that if she did not let the officers into her house, they would "take [her] to jail and take the children in [her]

house to Youth Court." *Id* at 1-2. Ms. Peairs avers that she "had no choice but to let them in." *Id.* at 2.

The female investigator inquired of Ms. Peairs whether Plaintiff had a computer. Ms. Peairs responded that she had a desktop computer that was not working and "some old computers that [she] picked up from the side of the road hoping [Plaintiff] could fix [her] computer, and that the computers were in the room where [Plaintiff] was staying." *Id.* "The room that [Plaintiff] was staying in was locked to keep the children out, and [Ms. Peairs] told the lady and man that [Plaintiff] had the key." *Id.* According to Ms. Peairs, the female investigator "kept insisting that [Ms. Peairs] unlock the door and sent the man out to the car to get some kind of paper." *Id.* The woman handed the paper to Ms. Peairs, but Ms. Peairs informed her that she could not read. *Id.* When the woman told Ms. Peairs that she could read the paper to her, Ms. Peairs "asked how would [she] know that you are reading what is on the paper." *Id.* According to Ms. Peairs, "[t]he lady told me to either sign the paper or go to jail and the children would go to Youth Court." *Id.* Ms. Peairs maintains that she signed the paper, even though she did not know what it said, in order to avoid going to jail or having the children taken to Youth Court. *Id.*[2]

---

[2]     Plaintiff has also supplied the Affidavit of Ms. Peairs' nephew, Gerald Nettles ("Nettles"), which states that Ms. Peairs is not able to read. Aff. of Gerald Nettles [62-5] at 1. According to Nettles, he read the Affidavit of Gloria Peairs to Ms. Peairs, and Ms. Peairs signed the Affidavit in his presence of her own free will.

Ms. Peairs avers that after investigators entered Plaintiff's room, "the lady tried to get [her] desktop to start, but it would not start." Aff. of Gloria Peairs [62-4] at 2. Ms. Peairs also claims that there was a laptop computer on the bedside table, which was turned off with the cover down. *Id*. According to Ms. Peairs, "[t]he lady tried to get the laptop computer to start, but it would not come on. The lady sent the man out to the car for a power cord." *Id*. When the man returned with the power cord, "[t]he lady worked on the laptop until she finally got it to come on." *Id*. at 3. Ms. Peairs maintains that "[a]fter about twenty to thirty minutes, the lady and man took the laptop computer, [Ms. Peairs'] desktop computer, and another broken computer that was on the floor in the bedroom, and they left [her] house." *Id*. Thornton points out that, even though Ms. Peairs' Affidavit only refers to a "lady" investigator, she never identifies this person by name and does not identify the investigator as Thornton. Reply [64] at 5. The search warrant for Mr. Tuskan's residence was returned as to the laptop computer and the desktop hard drive taken from Ms. Peairs' residence. Search Warrant Return [62-22] at 3.

As part of the investigation, "a check was made to see if there were outstanding warrants on [Plaintiff] within [the] jurisdiction" of the Jackson County Sheriff's Department. Aff. of Hope Manning (formerly Thornton) [57-13] at 1. "It was determined that there was an outstanding bench warrant for Marcus Jerome Peairs on a charge of contempt of court." *Id*. "After learning of the outstanding bench warrant, Mr. Peairs was arrested." *Id*.

Plaintiff was arrested by Officer Porter on June 1, 2011. Custody Form [57-9] at 1. Detective Jones interviewed Plaintiff later the same day. Investigator's Report [57-1] at 3. Plaintiff denied having downloaded any child pornography, but informed Jones that he owned a computer that he kept in his bedroom next to his bed on his night stand. *Id.* On May 16, 2013, a Jackson County, Mississippi, grand jury returned a no true bill as to the charge of exploitation of a child. No Bills Returned [57-10] at 2.

At the time of Plaintiff's arrest, he was apparently on supervised release from a prior criminal conviction in this Court. United States District Judge Walter J. Gex held a revocation hearing on a petition to revoke Plaintiff's supervised release on January 11, 2012. *See, e.g.,* Tr. of Revocation Hearing [62-7] at 1. Plaintiff testified at the revocation hearing in this Court that his bedroom door was "locked every now and then." *Id.* at 47. When Plaintiff's brother was at Ms. Pears' residence, "they will lock [Plaintiff's bedroom door] because that's the only door that does have a key to it for them to lock." *Id.* According to Plaintiff, "[j]ust about everybody" in the house had a key and access to the bedroom. *Id.* Plaintiff acknowledged that he had the laptop for several months before investigators came to Ms. Pears' house in June 2011 and that he had received the laptop from his youngest son's mother. *Id.* at 49-50. Plaintiff testified that the laptop was not password protected and that others in the house had access to it at any given time. *Id.* at 49. When asked if it was his "private computer," Plaintiff responded "[n]o, it's everybody's computer." *Id.*

B.    Procedural Background

Plaintiff filed suit against Defendants Jackson County, Mississippi, Mike Byrd, Hope Thornton, and Travelers Casualty and Surety Company of America on October 18, 2013.  Compl. [1] at 1.  Plaintiff advances several claims pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.  *Id*. at 6-22.

The Complaint alleges that Defendants violated Plaintiff's right to be free from false arrest as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution; his right to be free from unreasonable search and seizures under the Fourth Amendment; his right not to be deprived of liberty without due process of law as guaranteed by the Fifth and Fourteenth Amendments; his right to remain silent under the Fifth Amendment; and his right to free speech under the First Amendment.  Compl. [1] at 13-20.  Plaintiff also appears to assert claims under both federal and state law for malicious prosecution, abuse of process, false imprisonment, kidnapping, civil conspiracy, "neglect," and defamation.  *Id*. at 9-10, 14-18, 21-22.  As against Defendant Jackson County, Plaintiff makes a claim based upon respondeat superior liability.  *Id*. at 23.

Plaintiff sued Defendants Byrd and Thornton, both individually and in their official capacities, as members of the Jackson County Sheriff's Department.  *Id*. at 2.  On May 16, 2014, the Court dismissed Plaintiff's claims against Byrd and Thornton in their official capacities.  Order [21] at 4.  Byrd and Thornton have now filed a Motion for Summary Judgment Based on Qualified Immunity seeking dismissal of Plaintiff's individual capacity claims.  In support of their Motion for

Summary Judgment, Byrd and Thornton have attached as Exhibits 9, 13, and 14,
respectively, a Custody Form [57-9], the Affidavit of Hope Manning (formerly
Thornton) [57-13], and the Affidavit of Annie Vaughn [57-14].  Plaintiff has filed a
Motion to Strike these three exhibits.

## II. <u>DISCUSSION</u>

A.   <u>Plaintiff's Motion to Strike [60]</u>

Plaintiff objects to Byrd and Thornton's reliance upon Exhibits 9, 13, and 14,
citing Federal Rules of Civil Procedure 56(c)(1) and 56(c)(2).  Mot. to Strike [60] at
1.  Plaintiff argues that Exhibit 9 constitutes hearsay within hearsay, is
inadmissible pursuant to Federal Rules of Evidence 801 and 802, and was never
properly authenticated making it also inadmissible pursuant to Rules 901 and
902(11).  Mem. in Supp. of Mot. to Strike [61] at 6.  Plaintiff asserts that Exhibits
13 and 14 should be excluded because these Affidavits were never provided to
Plaintiff at any time during discovery.  *Id.* at 6-9.  Plaintiff further contends that
Exhibit 13, the Affidavit of Hope Manning (formerly Thornton), should be stricken
because it contradicts Thornton's prior deposition testimony.  *Id.* at 11-12.  Exhibit
14 should also be excluded because the affiant, Annie Vaughn, was not listed in
Defendants' Rule 26 disclosures or in any of their answers to interrogatories, which
specifically requested that Defendants identify witnesses with relevant knowledge.
*Id.* at 8-9.

1.      Relevant Legal Standards

a.      What Disclosures are Required

Federal Rule of Civil Procedure 26(a)(1)(A) requires a party to provide initial

disclosures to other parties including the following:

> (i)      the name and, if known, the address and telephone number of
> each individual likely to have discoverable information—along
> with the subjects of that information—that the disclosing party
> may use to support its claims or defenses, unless the use would
> be solely for impeachment; [and]
>
> (ii)     a copy—or a description by category and location—of all
> documents, electronically stored information, and tangible
> things that the disclosing party has in its possession, custody, or
> control and may use to support its claims or defenses, unless the
> use would be solely for impeachment . . . .

Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).  These disclosures are generally due "no later than

seven days before the Case Management Conference unless a different time is set

by court order . . . ."  L.U. Civ. R. 26(a)(1)(A).

"A party is under a duty to supplement disclosures at appropriate intervals

under Fed. R. Civ. P. 26(e) and in no event later than the discovery deadline

established by the case management order."  L.U. Civ. R. 26(a)(5).  According to

Federal Rule of Civil Procedure 26(e),

> [a] party who has made a disclosure under Rule 26(a)—or who has
> responded to an interrogatory, request for production, or request for
> admission—must supplement or correct its disclosure or response:
> (A)      in a timely manner if the party learns that in some material
> respect the disclosure or response is incomplete or incorrect, and
> if the additional or corrective information has not otherwise
> been made known to the other parties during the discovery
> process or in writing; or
> (B)      as ordered by the court.

Fed. R. Civ. P. 26(e)(1).

According to Federal Rule of Civil Procedure 37(c)(1), if a party fails to
identify a witness as required by Rule 26(a) or 26(e), the party is not permitted to
use that witness to supply evidence, unless the failure was substantially justified or
is harmless.  Fed. R. Civ. P. 37(c)(1).  In evaluating whether a violation of Rule 26 is
harmless, the Fifth Circuit looks to four factors:

> (1) the importance of the evidence; (2) the prejudice to the opposing
> party of including the evidence; (3) the possibility of curing such
> prejudice by granting a continuance; and (4) the explanation for the
> party's failure to disclose.

*Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir.
2003).

  b. <u>What Constitutes Competent Summary Judgment Evidence</u>

Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object
that the material cited to support or dispute a fact cannot be presented in a form
that would be admissible in evidence."   Fed. R. Civ. P. 56(c)(2). Hearsay is
generally not admissible unless there is an applicable exception.  Fed. R. Evid. 802.
Hearsay is defined as

> a statement that:
> (1) the declarant does not make while testifying at the current trial
>   or hearing; and
> (2) a party offers in evidence to prove the truth of the matter
>   asserted in the statement.

Fed. R. Evid. 801.  An exception to the rule against hearsay is

> [a] record of an act, event, condition, opinion, or diagnosis if:
>  (A) the record was made at or near the time by — or from
>     information transmitted by — someone with knowledge;

-12-

(B)     the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C)     making the record was a regular practice of that activity;

(D)     all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E)     the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Federal Rule of Evidence 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Under Federal Rule of Evidence 902, certain items of evidence are self-authenticating and require no extrinsic evidence of authenticity in order to be admitted. These include certified domestic records of a regularly conducted activity. Fed. R. Evid. 902(11).

Also of relevance here, the Fifth Circuit has held that "a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment." *Doe ex rel. Doe v. Dallas Indep. School Dist.*, 220 F.3d 380, 386 (5th Cir. 2000).

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

*Id.* (quoting *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

"Thus, the nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984) (citations omitted).  However, "[w]hen an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment."  *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996) (citing *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988)).

     2.    <u>Analysis</u>[3]

     a.    <u>Exhibit 14 – Affidavit of Annie Vaughn</u>

The Affidavit of Annie Vaughn is dated October 29, 2014, the same date Byrd and Thornton's Motion for Summary Judgment was filed.  According to the Affidavit, Vaughn is the records custodian for the Jackson County Sheriff's Department.  Aff. of Annie Vaughn [57-14] at 1.  Vaughn avers that certain exhibits to the Motion for Summary Judgment, including Exhibit 9 which is also at issue in Plaintiff's Motion to Strike, "are true and correct copies of those documents from the files of the Jackson County Sheriff's Department."  *Id.*  According to Vaughn, "[s]aid records are kept in the regular course of business, and are composed at or near the time of the events by a person with knowledge of the events."  *Id.*

---

[3]    Due to the nature of Plaintiff's arguments, the Court will address the exhibits out of order.

The Affidavit was disclosed to Plaintiff on the day it was signed, when Byrd and Thornton electronically filed their Motion for Summary Judgment.  While the Magistrate Judge set qualified immunity and dispositive motions deadlines regarding qualified immunity, no case management order has been entered in this case, and thus, no discovery deadline has been established.  *See* L.U. Civ. R. 26(a)(5).  Even assuming for the sake of argument that Defendants failed to provide information or identify a witness as required by Rule 26(a) or (e), as Plaintiff insists, the Court finds that any such failure was harmless.  *See* Fed. R. Civ. P. 37(c)(1).

The United States District Court for the Eastern District of Louisiana has addressed a similar question after defendants filed their final witness and exhibit lists before trial, which identified witnesses and exhibits that were not properly disclosed during discovery, including a "'representative from personnel department of Ingalls Shipbuilding Division,' not yet identified" who was to be called to authenticate documents that plaintiffs' counsel had subpoenaed.  *Moore v. BASF Corp.*, No. 11-1001, 2012 WL 4344583, *1-*3 (E.D. La. Sept. 21, 2012).  The Court considered the factors set forth by the Fifth Circuit in *Texas A&M Research Foundation* and concluded that the failure to disclose the Ingalls representative "was harmless if the witness's role at trial is limited to authentication of documents." *Id.* at *3.  The Court noted that "[t]he witness is necessary to the defendant's ability to admit other evidence, and plaintiffs have not asserted any potential prejudice." *Id.*  The Court required defendants to identify the

representative "as soon as possible" and gave plaintiffs the opportunity to depose the witness before trial.  *Id.*  The Court finds this reasoning persuasive.

While Plaintiff refers to Vaughn as a "key witness," Mem. in Supp. of Mot. to Strike [61] at 11, it appears that Vaughn's role here is limited to authenticating documents rather than offering any substantive testimony.  Byrd and Thornton's Motion relies upon documents which Vaughn has authenticated, and Plaintiff has not shown any prejudice in admitting the documents themselves.  Plaintiff only makes a conclusory allegation that he would be "severely prejudiced" if the Court considered Vaughn's Affidavit because Plaintiff also seeks to exclude other exhibits, including Exhibit 9, the Custody Form, which indicate that Plaintiff was arrested due to a bench warrant.  *Id.*; *see* Custody Form [57-9] at 1.  However, Byrd and Thornton represent that Byrd produced the Custody Form, which is identified by Bates stamp number "Byrd-P-0019," in discovery, and Plaintiff's counsel was in possession of this form at the time he deposed Thornton.  Resp. [65] at 2, 8; Byrd's Resps. to Pl.'s First Requests for Prod. [60-3] at 6-7.  Even if the Court excluded Vaughn's Affidavit, the Custody Form would remain competent summary judgment evidence under Federal Rule of Civil Procedure 56(c)(2), as it is capable of being offered in admissible form at trial.  Fed. R. Civ. P. 56(c)(2).  Plaintiff has not demonstrated any prejudice in this regard.

Based on the foregoing, the Court finds that Defendants' alleged failures to identify Vaughn as an individual with discoverable information and to supply a copy of her Affidavit prior to the qualified immunity discovery deadline were

-16-

harmless.  The Court will deny Plaintiff's Motion to Strike to the extent it seeks to exclude the Affidavit of Annie Vaughn.

  b. <u>Exhibit 9 – Custody Form</u>

  The Custody Form constitutes a record of regularly conducted activity within the meaning of Federal Rule of Evidence 803(6), and is therefore not excluded by the rule against hearsay as Plaintiff suggests.  Fed. R. Evid. 803(6).  Byrd and Thornton have submitted the testimony of the records custodian, through the Affidavit of Annie Vaughn, to demonstrate that the conditions of Rule 803(6)(A)-(C) are satisfied.  *See* Fed. R. Evid. 803(6)(D).  Plaintiff has "not show[n] that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness."  Fed. R. Evid. 803(6)(E).  The rule against hearsay does not preclude introduction of the Custody Form.  Fed. R. Evid. 803(6).

  Even without the Affidavit of Annie Vaughn, the Court nevertheless concludes that the Custody Form is competent summary judgment evidence and should not be stricken.  Federal Rule of Civil Procedure 56 does not require that evidence be in an admissible form at the summary judgment stage, just that the material can be presented "in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Byrd and Thornton could offer the appropriate custodial testimony at trial and present the Custody Form in a form that would be admissible in evidence.  *See id*.  Plaintiff's Motion to Strike, to the extent it seeks to exclude the Custody Form, will be denied.

c.    Exhibit 13 – Affidavit of Hope Manning (Formerly Thornton)

Plaintiff first argues that Thornton's Affidavit should be excluded because it was never supplied to Plaintiff during discovery. Mem. in Supp. of Mot. to Strike [61] at 6-8. Thornton is a named Defendant in this case and is obviously known to Plaintiff as an individual with discoverable knowledge. Plaintiff deposed Thornton on September 23, 2014. Dep. of Hope Thornton Manning [57-5] at 1. Thornton's Affidavit was disclosed to Plaintiff on the day it was signed on October 29, 2014, when it was attached as an exhibit to Byrd and Thornton's Motion for Summary Judgment. The Affidavit apparently did not exist prior to that date. The Court is not persuaded that the disclosure of Thornton's Affidavit was untimely.

Plaintiff next argues that Thornton's Affidavit should be stricken because it contradicts her prior deposition testimony. Mem. in Supp. of Mot. to Strike [61] at 11-12. Plaintiff's chief complaint centers on Thornton's statements about the bench warrant. In her Affidavit, Thornton attests in relevant part that:

3.    As part of our investigation of Mr. Peairs, a check was made to see if there were outstanding warrants on him without our jurisdiction. It was determined that there was an outstanding bench warrant for Marcus Jerome Peairs on a charge of contempt of court.

4.    After learning of the outstanding bench warrant, Mr. Peairs was arrested.

Aff. of Hope Manning (Formerly Thornton) [57-13] at 1. Plaintiff asserts that "[n]owhere in any reports or deposition of Hope Thornton does Hope Thornton mention an active bench warrant[,] and no where in the NCIC is there any mention

of an active bench warrant." Mem. in Supp. of Mot. to Strike [61] at 11. Plaintiff does not cite any specific portion of Thornton's deposition in support of his position.

The Custody Form, which was disclosed to Plaintiff prior to Thornton's deposition, indicates that Plaintiff was arrested on June 1, 2011. Custody Form [57-9] at 1. The two charges listed are for a "Bench Warrant" with an offense date of July 9, 2007, and "CHILD PORNOGRAPH" [sic] with an offense date of June 1, 2011. *Id.* Under the section of the Custody Form which asks the official to "Give Details of What Prompted This Arrest," the Custody Form reads as follows:

> B/W
> *HOLD FOR PROBATION & PAROLE[.]

*Id.*

From the portions of Thornton's deposition which the parties have submitted to the Court, there is no indication that Plaintiff's counsel asked Thornton about the bench warrant during her deposition. The inquiry appears instead to have focused on whether Thornton had probable cause to arrest Plaintiff for child pornography. *See, e.g.,* Dep. of Hope Thornton Manning [65-1] at 57-61. Thornton's deposition testimony is not directly contradictory to her Affidavit on the question of the existence of a bench warrant at the time of Plaintiff's arrest. The Affidavit therefore supplements Thornton's prior testimony, and Plaintiff's request to strike Thornton's Affidavit on this basis will be denied. *See S.W.S. Erectors, Inc.,* 72 F.3d at 496.

In sum, Plaintiff's Motion to Strike will be denied, and the Court will consider Exhibits 9, 13, and 14 in resolving Byrd and Thornton's Motion for Summary Judgment.

B.   Byrd and Thornton's Motion for Summary Judgment Based on Qualified Immunity [57]

1.   Legal Standard

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "[T]he usual summary judgment burden of proof is altered in the case of a qualified immunity defense." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001)).  "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik*, 422 F.3d at 262).

Although all inferences are drawn in a plaintiff's favor, "[t]he plaintiff bears the burden of negating qualified immunity . . . ." *Id.*  "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are

insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "The court has no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.* (citing *Ragas*, 136 F.3d at 458).

A two-pronged inquiry informs the qualified immunity analysis. *Rockwell v. Brown*, 664 F.3d 985, 990-91 (5th Cir. 2011) (citation omitted). The first prong concerns "whether an official's conduct violated a constitutional right of the plaintiff" while the second asks "whether that right was clearly established at the time of the violation." *Id.* at 991 (citation omitted). "[A] court may conduct the two-pronged qualified immunity inquiry . . . in any sequence." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

"[B]ecause the test for immunity is solely one of objective reasonableness, any 'subjective intent, motive, or even outright animus [is] irrelevant in a determination of qualified immunity based on arguable probable cause to arrest, just as an officer's good intent is irrelevant when he contravenes settled law.'" *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 755 (5th Cir. 2001) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000)). "Even if law enforcement officials erred in concluding that probable cause existed to arrest [the § 1983 plaintiff], they would be entitled to qualified immunity if their decision was reasonable, albeit mistaken."

*Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir. 1994) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

"An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight." *Callahan*, 623 F.3d at 253 (citation omitted). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Id.* (citation omitted). "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury." *Id.*

    2.    <u>Analysis</u>

    a.    <u>Plaintiff's Individual Capacity Claims Against Byrd Under Federal Law</u>

"A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'" *Jones v. Lowndes Cty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) (quoting *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008)). "A supervisor is not personally liable for his subordinate's actions in which he had no involvement." *Id.* at 350 (quoting *James*, 535 F.3d at 373). "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that

causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).

"A supervisor may also be liable for failure to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Id.* (quoting *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009)). "[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Goodman*, 571 F.3d at 395 (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).

Plaintiff has not submitted any competent summary judgment proof indicating that Byrd affirmatively participated in the acts that caused Plaintiff's alleged constitutional deprivations, or that Byrd implemented any unconstitutional policies that causally resulted in the purported constitutional injuries. Nor has sufficient proof been submitted that Byrd failed to adequately supervise or train Thornton. According to Thornton, she "did not receive any instructions from Mike Byrd to investigate or arrest Marcus Peairs, nor did [she] ever speak with Mike Byrd regarding the prosecution of Mr. Peairs." Aff. of Hope Manning (formerly Thornton) [57-13] at 1. Thornton also detailed training she has received regarding Internet Crimes Against Children ("ICAC"). *Id.*

-23-

Plaintiff makes general and unsupported allegations that Byrd failed to properly train and supervise employees of the Jackson County Sheriff's Department, that Byrd "issued instructions and promulgated policies and procedures for the Jackson County Sheriff's Department that directly caused violations of constitutional and civil rights of numerous individuals in the community, including the Plaintiff," and that Plaintiff was arrested because Byrd "wanted to find some way to arrest Ted Brushaber," "who would not agree to publically [sic] endorse Mike Byrd during his re-election campaign." Pl.'s Answers to First Set of Interrogs. [57-11] at 8-9. Mr. Brushaber lived across the street from Ms. Peairs and Mr. Tuskan. *Id.* at 8. However, Plaintiff has not submitted, and the record does not contain, any competent evidence beyond Plaintiff's unsupported allegations and inferences in this regard. Plaintiff offers no evidence of any official policy or procedure which causally resulted in a violation of Plaintiff's rights. As for his inadequate training claim, Plaintiff has not alleged with specificity how any training program was defective. *See Goodman*, 571 F.3d at 395.

Plaintiff "bears the burden of proving that a government official is not entitled to qualified immunity." *Michalik*, 422 F.3d at 258 (citation omitted). In satisfying his burden of negating Byrd's qualified immunity defense, Plaintiff "cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Id.* at 262 (citation omitted). Based on the record before the Court, Plaintiff has not

-24-

created a material fact question regarding Byrd's supervisory liability, and Byrd is entitled to summary judgment on Plaintiff's federal claims against him.

      b.    <u>Plaintiff's Individual Capacity Claims Against Thornton Under Federal Law</u>

      (i)    <u>Plaintiff's § 1983 Claims for Malicious Prosecution and Abuse of Process</u>

Plaintiff appears to concede that the Fifth Circuit has rejected his § 1983 abuse of process claim. Pl.'s Mem. Br. in Supp. of Resp. [63] at 24 (citing *Cevallos v. Silva*, 541 F. App'x 390, 394 (5th Cir. 2013)). No clearly established, freestanding federal constitutional right to be free from abuse of process exists under Fifth Circuit precedent. *See, e.g.*, *Cevallos*, 541 F. App'x at 394 (The Fifth Circuit "has rejected a freestanding right to be free from . . . abuse of process.") (citing *Sisk v. Levings*, 868 F.2d 159, 161-62 (5th Cir. 1989)). Thornton is therefore entitled to judgment as a matter of law on Plaintiff's § 1983 claim for abuse of process.

As for his § 1983 malicious prosecution claim, Plaintiff maintains that "[t]he Fifth Circuit has recognized a cause of action for prosecution without probable cause when the individual implicates the Fourth Amendment and complains of an arrest, detention, and prosecution without probable cause." Pl.'s Mem. Br. in Supp. of Resp. [63] at 22 (citing *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc)). According to Plaintiff, "it must be show[n] that the officials violated specific constitutional rights in connection with a 'malicious prosecution.'" *Id.* (quoting *Deville v. Mercantel*, 567 F.3d 156, 170 (5th Cir. 2009)). Plaintiff takes the position that

> [c]learly, the illegal search of Mr. Peairs['] house, room and computer violated his Fourth Amendment right against unlawful search and seizures without probable cause to do so and then used such evidence against him to prosecute him meets the requirements set out in *Castellano* to proceed with a prosecution without probable cause.

*Id*.

*Castellano* and subsequent Fifth Circuit precedent establish that the federal Constitution does not include a freestanding right to be free from malicious prosecution. *See, e.g., Deville*, 567 F.3d at 169; *Castellano*, 352 F.3d at 945; *see also Bloss v. Moore*, 269 F. App'x 446, 448 (5th Cir. 2008) (The Fifth Circuit "no longer recognizes a freestanding § 1983 claim for malicious prosecution.") (citing *Castellano*, 352 F.3d at 945).

> Instead, it must be shown that the officials violated specific constitutional rights in connection with a "malicious prosecution." For example, "the initiation of criminal charges without probable cause may set in force events that run afoul of the . . . Fourth Amendment if the accused is seized and arrested . . . or other constitutionally secured rights if a case is further pursued." However, these "are not claims for malicious prosecution."

*Deville*, 567 F.3d at 169 (quoting *Castellano*, 352 F.3d at 953-54). Thus, a plaintiff's claim under § 1983 for "malicious prosecution" is not independently cognizable, and a defendant is entitled to summary judgment on such a claim. *Id.* at 169-70. Thornton is therefore entitled to judgment as a matter of law as to Plaintiff's § 1983 claim for malicious prosecution.[4]

---

[4]    Plaintiff seeks in his Brief leave "to amend the Complaint to remove the references to 'malicious prosecution' in the title of the Count and within the body of the Complaint as it is misleading and does not clearly set forth the basis for Count Three of Plaintiff's Complaint." Pl.'s Mem. Br. in Supp. of Resp. [63] at 21-22. To the extent this is a concession by Plaintiff that he cannot maintain a freestanding malicious prosecution claim,

(ii)   Plaintiff's § 1983 Claims for Unlawful Search

Plaintiff appears to advance a § 1983 claim grounded upon the search conducted of his bedroom and laptop computer. Thornton has supplied a consent to search form, which Thornton maintains Ms. Peairs voluntarily signed, permitting investigators to search the residence and any computers in the residence. Dep. of Hope Thornton Manning [57-5] at 34-35; Investigator's Report [57-1] at 3; Tr. of Revocation Hearing [62-20] at 12; Consent to Search [57-6] at 1.

"Consensual searches are established exceptions to the Fourth Amendment's warrant requirement." *United States v. Mendez*, 431 F.3d 420, 429 (5th Cir. 2005) (citing *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)).

> In order to satisfy the consent exception, the government must establish that consent to search was freely and voluntarily given and that the individual who gave consent had authority to do so and must prove by a preponderance of the evidence that consent was voluntary and effective. Additionally, the government has the burden of proving that the search was conducted within the scope of the consent received.
>
> Consent need not be given by the [plaintiff] himself. In the context of searches, it is well established that the police may conduct a warrantless search of an area without running afoul of the Fourth Amendment if a third party with common control over the area consents to the search.

*United States v. Solis*, 299 F.3d 420, 436 (5th Cir. 2002) (quotations omitted).

---

or to the extent that Plaintiff seeks to cast his claim under a particular constitutional provision, the Court finds his request to amend unnecessary. The Court has dismissed any "malicious prosecution" claim against Byrd and Thornton, and the Court will consider any allegations that the initiation of criminal charges without probable cause set in force events that ran afoul of other specific constitutional provisions in turn. However, "those claims are for the 'lost constitutional rights' and 'are not claims for malicious prosecution.'" *Boyd v. Farrin*, 575 F. App'x 517, 520 (5th Cir. 2014) (quoting *Castellano*, 352 F.3d at 942).

-27-

(a)   <u>Whether Ms. Peairs' Consent Was Voluntary</u>

The initial question presented is whether a factual dispute exists in the record as to whether Ms. Peairs gave free and voluntary consent for Thornton to search her residence.  *See id.*  Plaintiff's Complaint alleges that "Plaintiff's mother *voluntarily* allowed Defendant Hope Thornton and certain unknown John or Jane Does 1-10 access to her home, including the bedroom in which the Plaintiff was staying at the time and all of the computers located in the bedroom."  Compl. [1] at 5 (emphasis added).  Plaintiff also swore under oath in his July 14, 2014, Responses to Thornton's First Set of Interrogatories that "Plaintiff's mother *voluntarily* allowed Defendants Hope Thornton and certain unknown John or Jane Does 1-10 access to her home, including the locked bedroom in which the Plaintiff was staying at the time."  Pl.'s Answers to First Set of Interrogs. [57-12] at 8 (emphasis added).

In response to Defendants' Motion for Summary Judgment, Plaintiff has supplied a July 17, 2014, Affidavit from Ms. Peairs, which indicates that she felt as if she "had no choice but to let [the investigators] in" because of threats the investigators allegedly made, Aff. of Gloria Peairs [62-4] at 1-2.  According to Thornton, Plaintiff did not produce Ms. Peairs' July 17, 2014, Affidavit until September 16, 2014, when Plaintiff served his First Supplemental Response to First Set of Requests for Production of Documents on the Issue of Qualified Immunity Propounded by Byrd.  Reply [64] at 4; Am. Notice of Serv. [52] at 1.  The first time this Affidavit was submitted of record to the Court was in opposition to the present Motion for Summary Judgment.  Nowhere in the record has Plaintiff attempted to

explain the discrepancy between his pleadings and the Affidavit with respect to whether Ms. Peairs' consent to search was given voluntarily.

"Normally, factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them." *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983); *see also McCreary v. Richardson*, 738 F.3d 651, 659 n.5 (5th Cir. 2013). "Facts that are admitted in the pleadings 'are no longer at issue.'" *Davis v. A.G. Edwards and Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (quoting *Ferguson v. Neighborhood Housing Services, Inc.*, 780 F.2d 549, 551 (6th Cir. 1986)). Once a judicial admission is made in pleadings, plaintiffs cannot create a factual dispute by supplying an affidavit which contradicts that admission. *Id.* at 107-08. "Irrespective of which document contains the more accurate account, the [plaintiffs] are bound by the admissions in their pleadings, and thus no factual issue can be evoked by comparing their pleadings with [a plaintiff's] affidavit." *Id.* at 108. "A party therefore may not rebut a judicial admission made in its pleadings with new evidence or testimony," *Giddens v. Cmty. Educ.Ctrs., Inc.*, 540 F. App'x 381, 390 n.3 (5th Cir. 2013) (citing *Davis*, 823 F.3d at 107-08), and may not present new evidence which "inexplicably contradicts her previously sworn deposition testimony and her amended complaint" in order "to defeat summary judgment," *Franco v. City of Corpus Christi*, 254 F.3d 1081, 2001 WL 563927, at *3 n.1 (5th Cir. 2001) (citations omitted).

"To qualify as a judicial admission, the statement must be (1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3)

deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which a judgment for the opposing party can be based." *Jonibach Mgmt. Trust v. Wartburg Enters., Inc.*, 750 F.3d 486, 491 n.2 (5th Cir. 2014) (quoting *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001)).

All five of these factors are satisfied in this case as it relates to the voluntariness of Ms. Pears' consent to search. *See id.* Plaintiff has never sought leave to amend his Complaint, and there is no indication that Plaintiff ever amended his sworn Responses to Interrogatories or otherwise attempted to withdraw these statements. Nor has Plaintiff made any attempt, in his pleadings or elsewhere, to explain the discrepancy between his and Ms. Pears' Affidavit's characterization of the consent. Plaintiff's statements in his Complaint and in his Responses to Thornton's First Set of Interrogatories that his mother voluntarily granted Thornton and others access to her residence, including Plaintiff's bedroom and all of the computers located in the bedroom, were made in a judicial proceeding, are contrary to a fact essential for Plaintiff's recovery on a theory of unlawful search, were deliberate and unequivocal in that they were clear and were repeated, and were about a fact, the voluntariness of Ms. Pears' consent, upon which a judgment for Defendants could be based. *See White*, 720 F.2d at 1396; *see also* Compl. [1] at 5; Pl.'s Answers to First Set of Interrogs. [57-12] at 8.

Giving preclusive effect to Plaintiff's statements that Ms. Pears voluntarily consented to the search also comports with public policy. *See White*, 720 F.2d at

1396.  The timing of the production of the Affidavit and the lack of any explanation for the discrepancy between it and Plaintiff's own statements suggest that the Affidavit may have been designed to create a fact question to defeat summary judgment, and the United States Supreme Court has recognized that in the context of qualified immunity there are "special policy concerns involved in suing government officials." *Wyatt v. Cole*, 504 U.S. 158, 167 (1992).  Given the nature and purpose of the doctrine of qualified immunity, and based upon the particular facts of this case, including the nature and timing of Ms. Pears' Affidavit, which contradicts without explanation Plaintiff's own Complaint and earlier sworn Responses to Interrogatories, giving preclusive effect to Plaintiff's statement regarding the voluntariness of Ms. Pears' consent to search accords with public policy.

Additionally, Thornton highlighted Plaintiff's admissions and argued in her Reply [64] filed on December 9, 2014, that the Court should give preclusive effect to Plaintiff's Complaint and sworn Interrogatory Responses.  Now, over nine months later, Plaintiff has never sought to amend his Complaint or sworn discovery responses, or to offer any explanation for the discrepancy.  Based on the totality of the circumstances, the Court concludes that treating Plaintiff's statements in his Complaint and Responses to Interrogatories as judicial admissions comports with public policy.  As such, the Court will treat Plaintiff's statements that Ms. Pears' consent was "voluntary" as judicial admissions binding on Plaintiff, and will

disregard those portions of the Affidavit which contradict Plaintiff's own pleadings and sworn statements.

    (b)    <u>Whether Ms. Pears Had Authority to Consent</u>

The Court must next consider whether Ms. Peairs had the authority to grant consent for Thornton to search Plaintiff's bedroom and the laptop computer.[5] "The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006) (citations omitted). This "jealously and carefully drawn" exception to the Fourth Amendment's prohibition of warrantless entry of a person's house "recognizes the validity of searches with the voluntary consent of an individual possessing authority." *Id.* at 109 (quotation and citations omitted). "That person might be the householder against whom evidence is sought or a fellow occupant who shares common authority over property, when the suspect is absent . . . ."

---

[5]    Thornton testified in her deposition that she did not search the laptop computer while she was in Plaintiff's bedroom. Dep. of Hope Thornton Manning [57-5] at 35. Instead, Thornton "raised the computer – brought it out – when you lift the computer top, it brought it out of hibernation." *Id.* at 36. At that point, Thornton "could see BearShare was on the front screen downloading into the BearShare library." *Id.* Ms. Peairs' account of the investigators' actions differs. *See* Aff. of Gloria Peairs [62-4] at 2-3. According to Ms. Peairs, the female investigator "worked on the laptop until she finally got it to come on" and then "was doing something on the laptop computer." *Id.* at 3. "After about twenty to thirty minutes, the lady and man took the laptop computer, [Ms. Peairs'] desktop computer, and another broken computer that was on the floor of in the bedroom, and they left [the] house." *Id.* The Court need not resolve the question of whether Thornton's version of events would constitute a "search" of the computer. Given the Court's resolution of the consent issue, the result here would not change regardless of which version of events is true.

*Id.* (citations omitted). "[T]he exception for consent extends even to entries and searches with the permission of a co-occupant whom the police reasonably, but erroneously, believe to possess shared authority as an occupant." *Id.* (citation omitted).

> (1) *Whether Ms. Peairs Had Actual Common Authority to Consent to the Search of Plaintiff's Bedroom and Laptop Computer*

The Supreme Court has explained that "the third party's 'common authority' is not synonymous with technical property interest . . . ." *Id.* at 110 (citing *Katz v. United States*, 389 U.S. 347, 352-53 (1967)).

> The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* (quoting *Katz*, 415 U.S. at 171). The Fifth Circuit has approached the question of actual common authority by asking "whether [party] A sufficiently relinquished his expectation of privacy to [party] B, i.e., allowed mutual or common use of the premises to the extent of joint access and control for most purposes, so that it is reasonably anticipated that B might expose the same privacy interest to others, even including law enforcement officers." *United States v. Shelton*, 337 F.3d 529, 536 (5th Cir. 2003). According to the Fifth Circuit, "no circuit has held that different principles apply to searches of computers than those that apply to the

searches of other containers." *United States v. Allen*, 250 F. App'x 9, 13 (5th Cir. 2007).

In response to the Motion for Summary Judgment, Plaintiff has supplied a transcript of his sworn testimony before this Court during a criminal revocation of supervised release hearing held on January 11, 2012. At this hearing, Plaintiff testified that his bedroom at Ms. Pears' residence was "locked every now and then." Tr. [62-7] at 47. Plaintiff explained that when his brother was at the residence, "they will lock it because that's the only door that does have a key to it for them to lock." *Id.*; *see also id.* at 50. According to Plaintiff, "[e]verybody in the house" had access to that bedroom, including Ms. Pears, Plaintiff's sister, and an individual identified only as "Kendrick." *Id.* at 47.

In his opposition to summary judgment, Plaintiff states that "[t]he laptop computer . . . was available for use by other members of the Pears family who were living with Gloria Pears." Pl.'s Mem. Br. in Supp. of Resp. Mem. [63] at 4. According to the exhibits supplied by Plaintiff, he testified at his revocation hearing that the laptop was not password protected and that anyone in the house could access that computer "[a]t any given time." Tr. [62-7] at 49. When asked if the laptop was his "private computer," Plaintiff responded "[n]o, it's everybody's computer." *Id.*

In sum, Plaintiff has not argued, and the record does not reflect, that Plaintiff attempted to restrict Ms. Pears' access to either his bedroom or laptop computer. Based on the foregoing, the summary judgment record demonstrates

that Plaintiff had sufficiently relinquished his expectation of privacy with respect to his bedroom and the laptop to others in the house, including Ms. Peairs. *See Shelton*, 337 F.3d at 535. As such, Ms. Peairs possessed common authority to give valid consent to the investigators' search of the bedroom and the laptop computer. *See id.* ("third party consent presumably extends the capacity to give consent to individuals to whom the one with the privacy interest has already substantially ceded his expectation of privacy"). Accordingly, Plaintiff has not established a genuine fact issue as to whether Thornton's search of his bedroom and laptop computer violated clearly established constitutional law. *See Callahan*, 623 F.3d at 253.

### (2)   *Whether Ms. Peairs Had Apparent Authority to Consent to the Search*

Even if Ms. Peairs did not possess actual common authority to consent to the search of Plaintiff's bedroom, Thornton could have reasonably believed at the time of the search that Ms. Peairs possessed the requisite shared authority to grant such consent. *See Randolph*, 547 U.S. at 109; *United States v. Newton*, 463 F. App'x 462, 467-67 (5th Cir. 2012). A determination of consent to enter must be judged against an objective standard. *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990) (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). A court must consider whether the facts available to the officer at that moment would cause a man of reasonable caution to believe that the consenting party had authority over the premises. *Id.* (citing *Terry*, 392 U.S. at 21-22). "If not, then warrantless entry without further inquiry is

unlawful unless authority actually exists.  But if so, the search if valid." *Id.* at 188-89.

Ms. Peairs owned the residence, and Plaintiff lived there rent free and under no contract.  Investigator's Report [57-1] at 3.  While Plaintiff's bedroom door was locked when the investigators arrived, Ms. Peairs "did not appear to have a problem with" consenting to the investigators' search of Plaintiff's bedroom and computers. Dep. of Hope Thornton Manning [57-5] at 33.  Ms. Peairs had access to the bedroom and went to retrieve a key to unlock the bedroom door for the investigators.  *Id.* at 33, 35; Investigator's Report [57-1] at 3.  Based on the foregoing, a man of reasonable caution would believe that Ms. Peairs had shared authority over Plaintiff's bedroom to consent to its search.  *See Rodriguez*, 497 U.S. at 188.

Therefore, based on the totality of the circumstances, Plaintiff has not shown that Thornton's conduct was objectively unreasonable in light of clearly established law, or that Thornton violated Plaintiff's Fourth Amendment rights in searching Plaintiff's bedroom and laptop.  Plaintiff has not met his burden of negating Thornton's qualified immunity defense, and Thornton is entitled to qualified immunity on Plaintiff's Fourth Amendment claim for unlawful search.

(iii)   <u>Plaintiff's § 1983 Claims for Unlawful Seizure, False Arrest, and False Imprisonment</u>[6]

Plaintiff appears to assert § 1983 claims for unlawful seizure, false arrest, and false imprisonment based upon his June 1, 2011, arrest on the child pornography charge. The facts he alleges in support of these claims are essentially identical.[7] The Fifth Circuit has applied the same standard for such claims. *See, e.g., Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004) (recognizing that for both a false arrest or false imprisonment claim under § 1983, a plaintiff must show that the defendant did not have probable cause to arrest him). The Court will therefore consider Plaintiff's unlawful seizure, false arrest, and false imprisonment claims as one § 1983 claim under the Fourth Amendment.

Plaintiff's claims for unlawful seizure, false arrest, and false imprisonment derive from the clearly established Fourth Amendment right to be free from unreasonable seizure of his person. *See Deville*, 567 F.3d at 164. To prevail, Plaintiff must demonstrate that Defendants lacked an arguable probable cause for his arrest. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citation

---

[6]    Plaintiff also attempts to a state claim under § 1983 for "kidnapping." Plaintiff has cited no legal authority indicating that this is a cognizable claim under § 1983. Even if it were, any allegations supporting a § 1983 kidnapping claim are subsumed by Plaintiff's § 1983 claims for false arrest and false imprisonment.

[7]    The Fifth Circuit recognizes different "tiers of citizen-police contact for purposes of fourth amendment analysis." *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014) (quotation omitted). "The first tier involves no coercion or detention and does not implicate the fourth amendment." *Id.* (quotation omitted). The second is a brief seizure that must be supported by reasonable suspicion. *Id.* (citation omitted). The third is "a full scale arrest [which] must be supported by probable cause." *Id.* (quotation omitted). In this case, all of Plaintiff's § 1983 claims appear to relate to a "full scale arrest" and thus require the existence of probable cause. *See id.*

omitted); *Haggerty*, 391 F.3d at 656. "[E]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Club Retro*, 568 F.3d at 206 (quotations omitted).

"The Supreme Court has defined probable cause as the facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (quoting *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000)). "The facts must be known to the officer at the time of the arrest; post-hoc justifications based on facts later learned cannot support an earlier arrest." *Id.* (citations omitted). "A showing of probable cause requires much less evidence than does a finding sufficient to convict." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) (citation omitted). "As applied to the qualified immunity inquiry, [Plaintiff] must show that [Thornton] could not have reasonably believed that [she] had probable cause to arrest the plaintiff for any crime." *O'Dwyer v. Nelson*, 310 F. App'x 741, 745 (5th Cir. 2009) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

In the present case, the competent summary judgment evidence reflects that Thornton observed a laptop computer in Plaintiff's bedroom with the BearShare file sharing program. Dep. of Hope Thornton Manning [57-5] at 35-36; Investigator's Report [57-1] at 3. The program contained a saved library with video contents including a file that appeared to Thornton to contain child photography. Dep. of Hope Thornton Manning [57-5] at 39; Investigator's Report [57-1] at 3. Ms. Pearis

informed Thornton that the laptop was Plaintiff's.  Dep. of Hope Thornton Manning [57-5] at 35.  Also, Plaintiff's bedroom was in the area of Ms. Peairs' home which was directly across from Mr. Tuskan's residence, where the open wireless internet connection and IP address used to download what appeared to be child pornography were located.  Dep. of Hope Thornton Manning [57-5] at 32; Investigator's Report [57-1] at 1; Cable One Letter [57-4] at 1.  Based on these facts, the Court finds that Thornton reasonably believed that probable cause existed to arrest Plaintiff for child pornography pursuant to Mississippi Code § 97-5-33.[8]  While the grand jury ultimately declined to indict Plaintiff on a child exploitation charge, the Court cannot conclude that no reasonable officer could have believed that there was probable cause to arrest Plaintiff for child pornography.

Even if the Court were to accept Plaintiff's argument that Thornton did not have valid consent from Ms. Peairs to enter his bedroom or search his computer such that the arrest could not properly be based upon facts learned from a search of Plaintiff's bedroom or computer, investigators determined prior to Plaintiff's arrest that there was an outstanding bench warrant for Plaintiff from July 9, 2007.  Aff. of Hope Manning (formerly Thornton) [57-13] at 1; Custody Form [57-9] at 1.  The warrant had been issued by a judge, not by Thornton.  *See Nalls v. LaSalle*, 568 F.

---

[8]        Mississippi Code § 97-5-33(3) provides that "[n]o person shall, by any means including computer, knowingly send, transport, transmit, ship, mail or receive any photograph, drawing, sketch, film, video tape or other visual depiction of an actual child engaging in sexually explicit conduct."  Miss. Code § 97-5-33(3).  Section 97-5-33(5) provides that "[n]o person shall, by any means including computer, knowingly possess or knowingly access with intent to view any photograph, drawing, sketch, film, video tape or other visual depiction of an actual child engaging in sexually explicit conduct."  Miss. Code § 97-5-33(5).

App'x 303, 307 (5th Cir. 2014) (holding that a Fourth Amendment "illegal seizure" claim against an official failed because the plaintiff's unwillingness to appear in court provided probable cause to support a bench warrant, which was issued by a judge, not the official).  There is no indication that Thornton had any involvement with the issuance of the bench warrant or that the bench warrant was facially invalid.  *See Harris v. Payne*, 254 F. App'x 410, 417 (5th Cir. 2007) (finding probable cause for arrest because officers acted pursuant to a facially valid warrant and did not act unreasonably in doing so).  Because the record supports the conclusion that Thornton held an objectively reasonable belief that probable cause existed to arrest Plaintiff based upon the bench warrant, Thornton is entitled to qualified immunity as to Plaintiff's § 1983 claims for unlawful seizure, false arrest, and false imprisonment arising out of his June 1, 2011, arrest.

      (iv)    <u>Plaintiff's § 1983 Claim for Deprivation of Liberty Without Due Process of Law</u>

Plaintiff asserts that Thornton violated his "Fourteenth Amendment right to due process by searching his locked bedroom and laptop computer without probable cause and by arresting him without a warrant or probable cause to do so."  Pl.'s Mem. Br. in Supp. of Resp. Mem. [63] at 25.  Plaintiff also appears to take the position that he was deprived of due process when he was prosecuted without probable cause.  *Id.* at 21.

Turning to Plaintiff's due process claim with respect to the purportedly unlawful search of his bedroom and computer, the Court has already determined

that Ms. Peairs gave voluntary consent to search Plaintiff's bedroom and laptop and that she had the common authority to do so.  Plaintiff has not demonstrated that Thornton's  conduct in searching his bedroom and laptop violated his clearly establish constitutional rights.  *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011).

To the extent Plaintiff's due process claim is grounded upon his arrest, Plaintiff maintains that he was arrested "without lawful justification, without reasonable suspicion, or probable cause to believe a criminal violation had been committed."  Compl. [1] at 12-16, 18, 19.  In considering a § 1983 due process claim arising out of an allegedly unlawful arrest, the Court must consider whether probable cause existed to arrest Plaintiff.  *Bergin v. Tatum*, 549 F. App'x 233, 236 (5th Cir. 2013).  "The inquiry focuses on the validity of the arrest, not the validity of each individual charge made during the course of the arrest."  *Id.* (citing *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001)).  For the reasons stated earlier with respect to Plaintiff's § 1983 claims for unlawful seizure, false arrest, and false imprisonment, the Court cannot say that a reasonable officer in Thornton's position could not have concluded that probable cause existed to arrest Plaintiff after observing what appeared to be child pornography on his computer and after learning of the bench warrant.

To the extent that Plaintiff argues that he was prosecuted without probable cause, Plaintiff advances only conclusory allegations and assertions regarding the lack of probable cause and Thornton's purported failure to investigate, which are

insufficient to overcome Thornton's qualified immunity.  *See Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1130 (5th Cir. 2014).  Nor has Plaintiff supplied any competent summary judgment evidence that Thornton herself submitted the investigation to the district attorney's office or that Thornton testified before the grand jury.  Without such evidence, Plaintiff cannot establish a due process violation with respect to Thornton.  *Craig v. Dallas Area Rapid Transit Auth.*, 504 F. App'x 328, 333 (5th Cir. 2012).  Moreover, the grand jury proceeding was resolved in Plaintiff's favor, and there is no competent summary judgment evidence to suggest that the grand jury proceeding was unfair.  *See id.*  Plaintiff has not overcome qualified immunity on this claim.

      (v)    <u>Plaintiff's § 1983 Claims for Violations of His Right to Remain Silent and His Right to Free Speech</u>

In Plaintiff's Memorandum Brief [63] in opposition to Byrd and Thornton's Motion for Summary Judgment, he "concedes that he has not set forth facts or evidence sufficient to establish a claim for a violation of his First and Fifth Amendment rights."  Pl.'s Mem. Br. in Supp. of Resp. [63] at 27.  Plaintiff's § 1983 claims for violations of his rights to remain silent and to free speech will therefore be dismissed.

      (vi)    <u>Plaintiff's § 1983 Claim for Defamation</u>

Defamation "is not a constitutional tort."  *Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir. 2003), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 948-49 (5th Cir. 2003) (citing *Paul v. Davis*, 424 U.S. 693, 712 (1976)).  "Because the

threshold immunity question is whether [Plaintiff has] alleged a clear constitutional harm, failure to do so results in dismissal of the claim." *Id.* (citation omitted). Thornton is therefore entitled to judgment as a matter of law on Plaintiff's § 1983 claim for defamation.

(vii)   Remaining Federal Claims in the Complaint

The Complaint asserts violations of 42 U.S.C. §§ 1985 and 1986 in a claim which Plaintiff characterizes as being one for civil conspiracy and "neglect."  Compl. [1] at 21.  Plaintiff concedes in his Memorandum [63] that summary judgment should be granted as to his "civil conspiracy and neglect" claims under §§ 1985 and 1986.  Pl.'s Mem. Br. in Supp. of Resp. [63] at 29.  These claims will be dismissed.

b.   Plaintiff's State Law Claims

Defendants also seek dismissal of Plaintiff's state law claims.  Defs.' Mem. in Supp. of Mot. for Summ. J. [58] at 8, 15.  Plaintiff responds that Byrd and Thornton's request for dismissal of his state law claims is premature. Pl.'s Mem. Br. in Supp. of Resp. [63] at 30.  The Court agrees.  This matter is before the Court on the question of qualified immunity.  The Court will deny without prejudice this portion of Defendants' Motion.

III. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's Motion to Strike should be denied, and that Defendants Byrd and Thornton's Motion for Summary Judgment Based on Qualified Immunity should be granted in part and denied in part without prejudice.

-43-

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion to Strike [60] filed by Plaintiff Marcus Peairs is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion for Summary Judgment Based on Qualified Immunity [57] filed by Defendants Mike Byrd and Hope Thornton, in their individual capacities, is **GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE**.  The Motion is **GRANTED** such that Defendants Byrd and Thornton are entitled to qualified immunity as to Plaintiff's individual capacity claims against them under federal law pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, and these claims against Defendants Byrd and Thornton are **DISMISSED WITH PREJUDICE**.  The Motion is **DENIED WITHOUT PREJUDICE** with respect to Plaintiff's state law claims.

**SO ORDERED AND ADJUDGED**, this the 25th day of September, 2015.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

-44-